1  DAVID F. GROSS (Bar No. 083547)
   david.gross@dlapiper.com
2  STEPHEN CHIARI (Bar No. 221410)
   stephen.chiari@dlapiper.com
3  **DLA PIPER LLP (US)**
   555 Mission Street, Suite 2400
4  San Francisco, CA 94105-2933
   Tel.: (415) 836.2500
5  Fax: (415) 836.2501

**FILED**

**E-filing**

MAR 2 5 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6  Attorneys for Defendant
   MOTRICITY, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 CAMELLIA WALKER, individually and       CASE NO.
   on behalf of a class of similarly situated
12 individuals,                             **CV 09   1316**

13              Plaintiff,                  **MOTRICITY, INC.'S NOTICE OF
                                            REMOVAL**
14      v.

15 MOTRICITY, INC., a Delaware
   corporation,
16
                Defendant.
17

18      Defendant, Motricity, Inc. ("Motricity"), pursuant to 28 U.S.C. §§ 1441, 1446, and 1453,

19 hereby gives notice of the removal of the above-captioned action from the Superior Court of the

20 State of California for the County of Alameda to the United States District Court for the Northern

21 District of California and states:

22 **I.      INTRODUCTION**

23      1.      On July 3, 2008, Plaintiff, individually and on behalf of all other wireless

24 telephone subscribers similarly situated in California, filed an action in the Superior Court of the

25 State of California for the County of Alameda captioned Walker v. Motricity, Inc., Case No. 08-

26 396630. Copies of the Summons and Complaint served on Motricity are attached as **Exhibit A**.

27      2.      This action is a civil action of which this Court has original jurisdiction under 28

28 U.S.C. § 1332, and is one which may be removed to this Court by Motricity pursuant to the

1    provisions of 28 U.S.C. 1441 and 1453.

2    3.    This case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because

3    Motricity has satisfied the procedural requirements for removal set forth in 28 U.S.C. § 1446(b),

4    and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d)

5    and 1453.[1]

6    4.    Pursuant to 28 U.S.C. § 1446(b), "a notice of removal can be filed within thirty

7    days after receipt by the defendant, through service or otherwise, of a copy of . . . other paper

8    from which it may first be ascertained that the case is one which is or has become removable."

9    On February 24, 2009, counsel for Motricity received documentation from which Motricity could

10   determine that Plaintiff seeks in excess of $5,000,000 in damages and restitution in this action

11   thus satisfying CAFA's amount in controversy requirement.[2]  This Notice of Removal is being

12   filed within thirty days of February 24, 2009.

13   5.    **Intradistrict Assignment**: This action arose in Alameda County, which is within

14   the San Francisco Division of the United States District Court for the Northern District of

15   California.  Therefore, assignment of this action to the San Francisco division is appropriate.

16   **II.    JURISDICTION PURSUANT TO CLASS ACTION FAIRNESS ACT**

17   6.    This case is subject to removal pursuant to the Class Action Fairness Act of 2005,

18   28 U.S.C. §§ 1332, 1453 ("CAFA").  CAFA grants federal courts jurisdictions over class actions

19   in which: (1) the aggregate number of proposed plaintiffs is 100 or greater; (2) any member of the

20   plaintiff class is a citizen of a different state than the defendant thus establishing the required

21   minimal diversity; (3) the primary defendants are not States, State officials, or other governmental

22

23   [1] This action was previously removed by Motricity on July 30, 2008 pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 ("CAFA").  On March 11, 2009, the Court granted Plaintiff's Motion to Remand holding that Motricity's evidence regarding its cost of complying with Plaintiff's request for injunctive relief did not prove CAFA's $5,000,000 amount in controversy requirement.  Because Motricity seeks to remove this action based on new and previously unknown grounds, removal is proper.  See Kirkbride v. Continental Casualty Co., 933 F.2d 729, 732 (9th Cir. 1991) (upholding successive removal on new and previously unavailable grounds); Mattel, Inc. v. Bryant, 441 F.Supp.2d 1081 (C.D. Cal. 2005) (upholding second removal based on new evidence proving amount in controversy).

24

25

26

27   [2] Motricity's counsel received this evidence after the Motion to Remand had been fully briefed, argued, and was pending.

28

1  entities; and (4) the aggregate amount-in-controversy exceeds $5,000,000.  28 U.S.C. §
2  1332(d)(2)(A), (d)(5)(A) - (B), and (d)(6).

3  7.  This action satisfies each of the jurisdictional requirements of Section 1332(d).  As
4  a result, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
5  1332(d).

6  **A.  This Action is a Class Action Consisting of More Than 100 Members.**

7  8.  In the Complaint, Plaintiff claims to represent a class of "all wireless telephone
8  subscribers in California who suffered losses or damages as a result of incurring charges on their
9  cellular telephone bills from or on behalf of Motricity not authorized by the subscriber . . .."
10  Compl., ¶ 34.  Plaintiff claims that the putative class consists of "thousands of individuals and
11  other entities, making joinder impractical . . .."  Compl., ¶ 35.  Based on these allegations, the
12  aggregate number of class members in the class that Plaintiff purports to represent is greater than
13  100 and thus satisfies 28 U.S.C. § 1332(d)(5)(B).

14  **B.  Plaintiff is a Citizen of a Different State Than Motricity.**

15  9.  Plaintiff is a citizen of the State of California.  Compl., ¶ 1.  Motricity is, and was
16  at the time Plaintiff commenced this action, a Delaware corporation with its principal place of
17  business in the State of Washington.  Compl., ¶ 2.  The minimal diversity required by CAFA is
18  met because Plaintiff and Motricity are citizens of different states.  See 28 U.S.C. §
19  1332(d)(2)(A).

20  **C.  Motricity is Not a State, State Official, or Other Governmental Entity.**

21  10.  As stated above, Motricity is a private corporation and thus 28 U.S.C. §
22  1332(d)(5)(A) is met.

23  **D.  The Amount in Controversy Exceeds $5,000,000.**

24  11.  Under CAFA, the claims of the individual class members are aggregated to
25  determine if the amount in controversy exceeds the required "sum or value of $5,000,000,
26  exclusive of interest and costs."  28 U.S.C. § 1332(d)(2), (d)(6).  Without conceding any merit to
27  the Complaint's allegations or causes of action, the $5,000,000 amount in controversy has been
28  met.

-3-

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\21686736.1                          MOTRICITY, INC.'S NOTICE OF REMOVAL

1

**Compensatory Damages**

2    12.    Although the Complaint does not state an amount in controversy, it does seek

3    economic, monetary, actual, consequential, and compensatory damages, on behalf of a class of all

4    wireless telephone subscribers in California, for Motricity's alleged practice of billing customers

5    for unauthorized mobile content. Compl., ¶ 34, Prayer for Relief, ¶ C. While Motricity disputes

6    and denies that it is liable to Plaintiff or the putative class and denies that any such class could be

7    properly certified pursuant to Federal Rule of Civil Procedure 23, based upon the allegations of

8    the Complaint and the sworn statements of Plaintiff's counsel, at least $3,000,000 of the

9    $5,000,000 amount in controversy requirement has been met.

10    13.    Motricity has generated in excess of $15,000,000 in revenue related to premium

11    mobile content from wireless subscribers in California. See Declaration of Steve Leonard

12    (hereafter "Leonard Declaration"), ¶ 5. A copy of the Leonard Declaration is attached hereto as

13    **Exhibit B**.

14    14.    On February 24, 2009, Motricity received for the first time documents in which it

15    learned that Jay Edelson, managing partner of KamberEdelson, LLC, Class Counsel for Plaintiff,

16    in the companion action styled Denee VanDyke and Ben Walker, individually and on behalf of a

17    class of similarly situated individuals v. Media Breakaway, LLC, United States District Court,

18    Southern District of Florida, Case No. 08-CV-22131, submitted his declaration in support of a

19    Motion for Preliminary Approval of Class Action Settlement stating:

20          11. Based upon information that Class Counsel has collected in this
            and the Related Action, and from experts, governmental agencies,
21          and in litigation involving the aggregators and wireless carriers,
            Class Counsel estimates that approximately 20% of all mobile
22          content charges are unauthorized. . . .

23    Declaration of Jay Edelson (hereafter "Edelson Declaration"), ¶ 11. A copy of the Edelson

24    Declaration is attached hereto as **Exhibit C**. This was Motricity's first notice of this information.

25    15.    Class Counsel's statement that 20% of all mobile content charges are unauthorized

26    was, by its terms, a generalization across the wireless industry. Because the instant litigation

27    involves alleged unauthorized billing by Motricity, an aggregator, and this is the same type of

28    litigation from which Class Counsel generated the 20% figure, Class Counsel's statement applies

1    to this case with equal force as it did in VanDyke.

2        16.    Further, Class Counsel represents that his firm and its predecessor have been

3    involved in a wide-ranging investigation into the mobile content industry since 2005 and that

4    consumers have filed numerous lawsuits across the country against all major wireless carriers

5    (e.g., AT&T, Sprint & T-Mobile), aggregators and mobile content providers. Ex. C, Edelson

6    Declaration, ¶¶ 3 and 4.

7        17.    Class Counsel also states that these "numerous pending class actions involving

8    alleged unauthorized charges" have allowed the parties to develop legal and factual theories that

9    have been tested through motion practice. Ex. C, Edelson Declaration, ¶ 15.

10       18.    Class Counsel's firm resume,[3] in the section titled "Plaintiff's Class and Mass

11   Action Practice Group," states, "We have prosecuted over 100 cases involving mobile content,

12   settling numerous nationwide class actions, including against industry leader AT&T Mobility . . .

13   ." Ex. C, Edelson Declaration, Ex. B-1.

14       19.    The "Representative Settlements" section for the "Plaintiff's Class and Mass

15   Action Practice Group" lists a number of cases, in which, similar to this case, Class Counsel

16   represented wireless subscribers alleging that unauthorized charges had been placed on their cell

17   phone bills. Among those cases are the following:

18           McFerren v. AT&T Mobility, LLC, No. 08-CV-151322 (Fulton
             County Sup. Ct., GA): Lead counsel in class action settlement
19           involving 16 related cases against largest wireless service provider
             in the nation. Settlement provided virtually full refunds to a
20           nationwide class of consumers who alleged that unauthorized
             charges for mobile content were place on their cell phone bills.
21
             Gray v. Mobile Messenger Americas, Inc., No. 08-CV-61089 (S.D.
22           Fla.): Lead counsel in case alleging unauthorized charges were
             placed on cell phone bills. Case settled for $12,000,000.
23
             Gresham v. Cellco Partnership, No. BC 387729 (Los Angeles Sup.
24           Ct.): Lead counsel in case *alleging unauthorized charges were
             placed on cell phone bills*. Settlement provided class members with
25           full refunds.

26           Duffy v. Nevis Mobile, LLC, No. 08 CH 21376 (Cir. Ct. Cook
             County, IL): Class counsel in certified class action against mobile
27

         ──────────────────────
         [3] This resume was attached as an exhibit to the Edelson Declaration.
28

content provider for ***unauthorized mobile content charges***
resulting in default judgment over $10,000,000.

Ex. C, Edelson Declaration, Ex. B-1 (emphasis added).

20.    Class Counsel's role in representing other plaintiff classes alleging unauthorized

billing for mobile content along with Edelson's own statements indicate that Class Counsel views

this purported class action as part of a mega class action that Class Counsel is prosecuting against

wireless carriers, content providers, and aggregators in multiple jurisdictions. Because Class

Counsel's own representations indicate that the facts and theories in one such case are tested and

applicable in the other cases, the representations in the Edelson Declaration apply to this case.

21.    Finally, the Edelson Declaration is applicable because VanDyke is virtually

identical to this case as evidenced by the following:

> a.    The VanDyke class brought a lawsuit against Alltel Communications, LLC, and Media Breakaway, LLC, who, like Motricity, are involved in the delivery of mobile content to wireless devices.
> b.    The VanDyke Complaint, just as the complaint in this case, alleges that the defendants engaged in an improper billing scheme whereby the purported plaintiff class was charged for unauthorized mobile content. VanDyke v. Alltel Communications and Media Breakaway, LLC, ¶¶ 6-21. A copy of the VanDyke Complaint is attached hereto as **Exhibit D**. In fact, twelve (12) paragraphs of the Plaintiff's Complaint in this case describing the allegedly improper billing scheme are virtually identical to paragraphs of the VanDyke Complaint. Compare Compl., Ex. A, ¶¶ 6-13, 19-20, 22-25 with VanDyke Compl., ¶¶ 6-8, 10-16, 18-21.
> c.    Both complaints allege that the classes are those "wireless telephone subscribers" who suffered losses or damages as a result of the defendants' alleged billing for "mobile content products and services not authorized by the subscriber." Compare Compl., Ex. A, ¶ 34 with VanDyke Compl., ¶¶ 43(A) & (B).
> d.    Both complaints allege causes of action for Restitution/Unjust Enrichment and Tortious Interference with a Contract. Compare Compl., Ex. A, ¶¶ 42-51 with VanDyke Compl., ¶¶ 60-68.
> e.    Both complaints broadly request injunctive relief necessary to protect the interests of the plaintiff and the class. Compare Compl., Ex. A, ¶ 56, 61, 67, Prayer for Relief, ¶ H with VanDyke Compl., Prayer for Relief, ¶ H.
> f.    Neither class specifies a class period.

22.    Because VanDyke is almost identical in its factual allegations, class allegations,

and causes of action to this action, and because the Edelson Declaration, by its terms, declares

that it is applicable in other similar matters, the Court should consider the admission in the

Edelson Declaration as applicable and relevant to the amount in controversy in this matter.

23.    Because Motricity has generated in excess of $15,000,000 in revenue related to

-6-

1    premium mobile content from wireless customers in California — and because Plaintiff's counsel

2    have asserted that 20% of all mobile content charges are unauthorized — at least $3,000,000 of

3    the $5,000,000 threshold is met.

4    24.    Further, asserting this Court's CAFA jurisdiction is consistent with the VanDyke

5    v. Media Breakaway, LLC case mentioned above. In that case Class Counsel states that he

6    "believes the *$5.75 million settlement* cap [set in that case's Stipulation of Settlement]

7    approximates the full amount of the unauthorized charges attributable to Media Breakaway."[4]

8    Ex. C, Edelson Declaration, ¶ 12 (emphasis supplied). Since Van Dyke similarly involves a class

9    action alleging liability for "cramming" and asserting similar causes of action, this Court can

10    consider VanDyke's proposed settlement cap as probative of the amount in controversy. See

11    Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (court can consider damage awards

12    in similar cases in determining whether amount in controversy is met).

13    25.    Pursuant to 28 U.S.C. § 1446(b), "a notice of removal can be filed within thirty

14    days after receipt by the defendant, through service or otherwise, of a copy of an . . . other paper

15    from which it may first be ascertained that the case is one which is or has become removable."

16    26.    On February 24, 2009 Motricity's counsel received the Edelson Declaration in an

17    e-mail from counsel in a related matter. Such a communication between counsel qualifies as

18    "other paper" from which removability may be ascertained. See e.g., Wright and Miller, Federal

19    Practice and Procedure, § 3732 ("The federal courts have given the reference to 'other paper' an

20    embracive construction and have included a wide array of documents within its scope . . . [and]

21    correspondence between the parties and their attorneys or between the attorneys usually are

22    accepted as 'other paper' sources that initiate a new thirty-day period of removability.");

23    Broderick v. Dellasandro, 859 F. Supp. 176 (E.D. Pa. 1994); Sunburst Bank v. Summit

24    Acceptance Corp., 878 F. Supp. 77 (S.D. Miss. 1995); Central Iowa Agri-Systems v. Old

25    Heritage Advertising and Publishers, Inc., 727 F. Supp. 1304 (S.D. Iowa 1989). See also Cohn v.

26    Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) (settlement letter sufficient to establish amount

27

28

---

[4] According to Mr. Edelson, Media Breakaway is a content provider. Ex. C, Edelson Declaration, ¶ 4.

1  in controversy); Baxter v. Nat'l Safety Council, No. C05-0752C, 2005 WL 2219369 (W.D. Wash.

2  Sept. 13, 2005) (post-removal receipt of settlement letter proved amount in controversy).

3      27.  For the Court's convenience, Motricity attaches the prior state court notice of

4  removal and its attachments as **Exhibit E**.

5  **Restitution**

6      28.  Plaintiff seeks restitution of all money which Motricity has allegedly received

7  unjustly from Plaintiff and the purported class as a result of Motricity's billing practices. Compl.,

8  ¶¶ 43-46, 56, 61, 67. Plaintiff later asserts that the amounts Motricity allegedly owes Plaintiff and

9  the other members of the purported class can be ascertained through an accounting. Compl., ¶ 70.

10     29.  Because Motricity has received in excess of $15,000,000 in revenue related to

11  premium mobile content from wireless customers nationwide, if Motricity is required to make

12  restitution for 20% of all such charges, the percentage of alleged unauthorized charges, at least

13  $3,000,000 of the $5,000,000 threshold is met.

14  **Punitive Damages**

15     30.  Plaintiff's request for "exemplary damages", Compl., Prayer for Relief ¶ C,

16  demonstrates that the remainder of the $5,000,000 threshold is met. Punitive and exemplary

17  damages are considered part of the amount in controversy. See e.g., Gibson v. Chrysler Corp.,

18  261 F.3d 927, 945 (9th Cir. 2001). Courts have held that, in determining the amount of punitive

19  damages for the amount in controversy calculation, it is appropriate to apply a two to three time

20  multiplier to a Plaintiff's actual damages. See e.g., Buller v. Owner Operator Independent Driver

21  Risk Retention Group, Inc., 461 F.Supp.2d 757, 763 (S.D. Ill. 2006) ("constitutionally-

22  permissible award of punitive damages in a ratio of two or three times" the class's aggregate

23  actual damages allowed court to conclude that $5,000,000 amount in controversy met when

24  considered alongside claim for actual damages).

25     31.  Although Motricity denies that Plaintiff or the putative class is entitled to recover

26  punitive or exemplary damages, even a one time multiplier of the $3,000,000 actual damages

27  figure would result in at least $3,000,000 in punitive damages. Therefore, it is appropriate for

28  this court to hold that the amount of punitive damages in controversy brings the total amount in

-8-

DLA PIPER LLP (US)
SAN FRANCISCO        WEST\21686736.1                          MOTRICITY, INC.'S NOTICE OF REMOVAL

1  controversy to well in excess of $5,000,000.

2  **Attorneys' Fees and Expenses**

3  32.  On behalf of the purported class, Plaintiff also seeks an award of court costs and

4  attorneys' fees under the California Consumer Legal Remedies Act, under the California Unfair

5  Competition Law, and the California Computer Crime Law. Compl. ¶¶ 56, 61, 67, Prayer for

6  Relief, ¶ D. Although Motricity denies that Plaintiff or the putative class is entitled to recover

7  attorneys' fees and costs, because Plaintiff seeks attorney's fees pursuant to statutes which allow

8  for such fees, this Court should include this amount in the amount in controversy calculation. See

9  Brady v. Mercedes Benz, 243 F.Supp.2d 1004, 1010-1011 (N.D. Cal. 2002) (can consider

10  prospective attorneys' fees as allowed by law in determining amount in controversy).

11  Specifically, the Court should consider Class Counsel's fees in VanDyke, where the parties have

12  agreed that Class Counsel's fee award will be as much as $2,300,000, as probative of the likely

13  amount of prospective attorneys' fees in this case. Edelson Declaration, ¶ 10; Beaver v. NPC

14  International, Inc., 451 F.Supp.2d 1196, 1198 (D. Or. 2006) (attorneys' fees awards in similar

15  cases are probative of amount in controversy).

16  33.  Because the percentage of unauthorized charges asserted by Class Counsel

17  considered along with the nature and extent of Motricity's business demonstrates that Plaintiff

18  seeks more than $3,000,000 in actual damages and restitution and because it is appropriate for the

19  court to multiply that amount by a two or three time multiplier to determine the amount of

20  punitive and exemplary damages in controversy, the amount in controversy is far above

21  $5,000,000 and the CAFA amount in controversy requirement is met on damages/restitution

22  alone.

23  34.  Further, the Court should also consider that Class Counsel for Plaintiff has sought

24  more than $5,000,000 in damages and restitution in similar actions and attorneys' fees in excess

25  of $2,000,000 in holding that the CAFA amount in controversy requirement is exceeded.

26  35.  In summary, all of CAFA's jurisdictional requirements are satisfied. As a result,

27  this Court has subject matter jurisdiction over this action.

28

-9-

1  **III.  PROCEDURAL STATEMENT**

2  36.  Because Motricity received the new evidence related to the extent of Plaintiff's

3  alleged damages and restitution on February 24, 2009, this Notice of Removal has been timely

4  filed within thirty (30) days pursuant to 28 U.S.C. § 1446(b).

5  37.  Pursuant to 28 U.S.C. § 1441(a), removal to the United States District Court for

6  the Northern District of California is proper because the Superior Court of the State of California,

7  Alameda County is located within this District.

8  38.  Pursuant to 28 U.S.C. § 1446(a), Motricity will promptly provide notice of this

9  Notice of Removal to the Superior Court of the State of California, Alameda County.

10  39.  This Notice of Removal has been served upon all parties pursuant to 28 U.S.C. §

11  1446(d).

12  40.  By removing this action to this Court, Motricity does not waive any defenses,

13  objections or motions available to it under state and federal law.

14  Wherefore, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendant Motricity, Inc.,

15  hereby removes the above-captioned civil action from the Superior Court of the State of

16  California, Alameda County.

17

18  Dated: March 2 5 , 2009                    Respectfully submitted,

19                                             DLA PIPER LLP (US)

20
                                             By
21                                               DAVID F. GROSS
                                               STEPHEN CHIARI
22                                             Attorneys for Defendant
                                               MOTRICITY, INC.
23

24

25

26

27

28

WEST\21686736.1

-10-

MOTRICITY, INC.'S NOTICE OF REMOVAL

*6793591*
SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ALAMEDA COUNTY

F I L E D

2008 JUL -3 PM 2:51

CLERK OF THE SUPERIOR COURT

BY *Dorothy L Lee*

DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MOTRICITY, INC., a Delaware corporation,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CAMELLIA WALKER, individually and on behalf of a class of similarly
situated individuals,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
René C. Davidson Alameda County Courthouse
1225 Fallon St., Oakland, CA, 94612

CASE NUMBER:
*(Número del Caso):* 08 = 386630

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alan Himmelfarb. KAMBEREDELSON LLC,
2757 Leonis Blvd., Los Angeles, CA 90058, (323) 585-8696

DATE:    PAT S. SWEETEN                    Clerk, by *Dorothy L Lee*, Deputy
*(Fecha)* 'JUL 0 3 2008                    *(Secretario)*                *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.  www.USCourtForms.com

Served 7·08



1  ALAN HIMMELFARB - SBN 90480
   KAMBEREDELSON, LLC
2  2757 Leonis Boulevard
   Vernon, California 90058
3  Telephone: (323) 585-8696

4  *Attorneys For Plaintiff*

FILED
ALAMEDA COUNTY

2008 JUL -3 PM 2: 52

CLERK OF THE SUPERIOR COURT

BY _____
                DEPUTY

5           SUPERIOR COURT OF THE STATE OF CALIFORNIA

6                  FOR THE COUNTY OF ALAMEDA

7

8  CAMELLIA WALKER, individually and ) Case No. RG 08 - 3 9 6 6 3 0
   on behalf of a class of similarly situated )
9  individuals,                              ) COMPLAINT FOR DAMAGES AND
                                             ) INJUNCTIVE RELIEF
10              Plaintiff,                    ) [RESTITUTION/UNJUST
                                             ) ENRICHMENT; TORTIOUS
11 v.                                        ) INTERFERENCE WITH A
                                             ) CONTRACT; UNLAWFUL, UNFAIR
12 MOTRICITY, INC., a Delaware               ) AND DECEPTIVE BUSINESS
13 corporation,                             ) PRACTICES [CAL. BUS. & PROF.
                                             ) CODE §17200, *et seq.*)
14              Defendant.                    )
                                             ) DEMAND FOR JURY TRIAL
15                                           )
16                                           ) CLASS ACTION    BY FAX
17

18

19                    CLASS ACTION COMPLAINT

20     Plaintiff Camellia Walker brings this class action complaint against Defendant

21 Motricity, Inc. ("Motricity"), seeking to stop Defendant's unlawful practice of charging

22 cellular telephone customers for products and services the customers have not authorized, a

23 practice which has resulted in Defendant unlawfully collecting thousands of dollars from

24 consumers statewide, and to obtain redress for all persons injured by its conduct. Plaintiff,

25 for her class action complaint, alleges as follows upon personal knowledge as to herself and

26 her own acts and experiences, and, as to all other matters, upon information and belief,

27 including investigation conducted by her attorneys.

28

   COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**PARTIES**

1.     Plaintiff Palma Walker is a resident of Alameda County, California.

2.     Defendant Motricity, Inc. ("Motricity") is an "aggregator" and operates a mobile transaction network that processes mobile payments and related transmissions on its behalf and on behalf of carriers, other aggregators and third party mobile content providers, including various subsidiaries through which it operates. Motricity is a Delaware corporation with its headquarters and principal place of business in the State of Washington. Motricity does business throughout the State of California and this county.

**JURISDICTION**

3.     This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

4.     This Court has jurisdiction over Defendant pursuant to Code of Civil Procedure section § 410.10 because Defendant conducts business in the State of California and/or many of Defendant's wrongful acts arose or emanated from California.

**VENUE**

5.     Venue is proper in this Court pursuant to Code of Civil Procedure because Plaintiff resides in Alameda County.

**CONDUCT COMPLAINED OF**

6.     This case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including -- most significantly for present purposes -- "premium" text message services. These services, also known as "mobile content" include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2

1  more advanced capabilities (such as direct payment services, interactive radio and

2  participatory television).

3      7.    The second underlying phenomenon of this case constitutes its very core.

4  That is, just as providers of premium mobile content deliver their products by means of cell

5  phone technology, they likewise charge and collect from their customers by "piggybacking"

6  on the cell phone bills sent out by the wireless carriers. Further, because the mobile content

7  providers by themselves most often lack the wherewithal to negotiate the necessary

8  relationships with the much larger wireless carriers, they do so with the help of third-party

9  companies, such as Motricity, known as aggregators. These aggregators act as middle-men,

10  representing numerous mobile content providers in arriving at the agreements that allow

11  them to use the billing and collection mechanisms of the wireless carriers. In turn, both the

12  aggregators and the wireless carriers are compensated for their services to the mobile content

13  providers by retaining a substantial percentage of the amount each premium mobile content

14  transaction.

15      8.    The rapid and largely unplanned growth of the premium mobile content

16  industry has led both to the above-described structure and to a disastrous flaw within it. That

17  flaw -- understood, perpetuated, and even encouraged by carriers, aggregators, and mobile

18  content providers such as the instant defendants -- is an open secret within the industry, but

19  little understood outside of it. In short, the billing and collection systems established by

20  companies including Defendant in aid of the premium mobile content industry that enriches

21  them are conspicuously free of any checks or safeguards to prevent erroneous and

22  unauthorized charges from being added to customers' bills.

23      9.    As Defendant also knows, thousands of dollars have been collected on

24  account of such unauthorized charges for premium mobile content in the industry over the

25  last few years. And while it has always been within the power of companies such as

26  Defendant to institute simple and effective measures that would prevent this, they have

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

3

1    instead knowingly maintained the very system that has allowed these erroneous charges.

2    Indeed, Defendant has reaped and retained its respective shares of the improper collections.

3        10.    While the total sales in California of premium mobile content in 2007 amount

4    to a multimillion dollar sum, the business is still in its infancy. The burgeoning industry has

5    already expanded from ordinary ringtones into mass media-related products such as

6    interactive radio and participatory voting at television and concert events and, most recently,

7    into services that enable cell phones to function as credit cards. Unchecked, Defendant's

8    practices will injure an ever-increasing number of unwitting consumers, inflicting damages

9    of an untold magnitude.

10       11.    Unlike transactions made using checks and credit cards, which require a

11   signature or a highly private sixteen-digit credit card number, the only thing a mobile content

12   provider needs to charge a consumer for its products is the consumer's cellular telephone

13   number. Once a mobile content provider has a consumer's cell phone number, it can cause

14   that consumer to be billed for services and products irrespective of whether the consumer

15   actually agreed to purchase them.

16       12.    Armed with only a cell phone number, the mobile content provider can simply

17   provide that number, along with an amount to be charged, to a billing aggregator (such as

18   Motricity). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to

19   the bill associated with that cell phone number. The charge will then appear on the

20   consumer's cell phone bill, often with only minimal, cryptic identifying information.

21       13.    Because the protections normally present in consumer transactions -- such as

22   signatures and private credit card numbers – are absent from this process, the likelihood of

23   false charges increases enormously. And because a substantial part of mobile content "sales"

24   are effected through web sites using misleading, oblique, or inadequately explained

25   "consent" procedures, that likelihood increases by another order of magnitude. Mobile

26   content providers have powerful financial incentives to collect as many cell phone numbers

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4

1   as possible but little incentive to ensure that the owners of those numbers have truly agreed to

2   purchase their goods and services.

3   **Aggregators' Role In the Scheme to Defraud**

4   14.   In order to tap into the emerging wireless content marketplace and make

5   content services available to wireless consumers, content providers must first obtain access to

6   wireless carriers' mobile communications networks and frequently do so by "partnering"

7   with aggregators -- intermediary companies such as Motricity that offer content providers (its

8   "content provider partners") direct access to the carriers through existing relationships. This

9   allows content providers to focus on developing and marketing branded content, applications

10  and programs while aggregators manage the complex carrier relationships, distribution,

11  billing and customer service.

12  15.   In order to tap into the emerging wireless content marketplace and make

13  content services available to wireless consumers, content providers must first obtain access to

14  wireless carriers' mobile communications networks and frequently do so by "partnering"

15  with aggregators -- intermediary companies such as Motricity that offer content providers (its

16  "content provider partners") direct access to the carriers through existing relationships. This

17  allows content providers to focus on developing and marketing branded content, applications

18  and programs while aggregators manage the complex carrier relationships, distribution,

19  billing and customer service.

20  16.   As an aggregator, Motricity operates mobile transaction networks helping

21  companies, develop, deliver, and bill for mobile content services to compatible mobile

22  devices throughout the State of California and the nation.

23  17.   By using their end-to-end technology platforms, their relationships with U.S.

24  carriers, and other value-added services, these aggregators have forged a crucial link between

25  the wireless carriers and the mobile content providers. They have enabled the transformation

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

5

1    of wireless into a marketing, content delivery, and collections process, while carving out a

2    profitable role for themselves as very critical middlemen in this rapidly growing industry.

3        18.    Motricity has developed a vast distribution system that integrates into the

4    wireless networks of some of the largest wireless carriers nationwide, providing direct

5    connections to numerous mobile operators.  As a result, Motricity is able to reach and bill

6    millions of wireless subscribers nationwide.

7        19.    While aggregators such as Motricity charge their content provider customers

8    some upfront fees, their revenue is primarily generated through a "revenue share" on

9    transactions for which they bill cell phone subscribers: each time a charge is incurred in

10   connection with the purchase of mobile content services offered by a content provider, the

11   aggregator and/or the content provider cause said charge to be billed directly on the cellular

12   telephone bill of the carrier's customer who currently owns and/or uses the telephone number

13   (claimed to be) associated with said purchase.

14       20.    The carrier then bills and collects the charge from its current subscriber,

15   retains about a portion of the proceeds as its "revenue share" and then remits the balance to

16   the aggregator who has direct access to its network, e.g., Motricity, who retains a percentage

17   of the balance in the form of its own "revenue share," and then remits the remainder directly

18   to the mobile content provider (or, in some instances, to another aggregator who then retains

19   a percentage of the balance in the form of its own "revenue share" and then remits the

20   balance to its mobile content provider client).

21       21.    Motricity has in California registered thousands of transactions and processed

22   thousands of dollars in transactions over recent years and has profited greatly from its

23   arrangement with its carrier partners, aggregator partners, and content provider partners.

24       22.    As Motricity knows, carriers such as AT&T and Verizon routinely process

25   charges for mobile content that have not been authorized by the charged party.

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

23. Motricity has not only sanctioned this illegal billing, it has promoted it by negotiating and facilitating partnerships between the carriers and the mobile-content providers that contains few if any safeguards to prevent unauthorized charges.

24. Indeed, if Defendant wanted to end this illegal billing, it could do so in an instant. All it would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and his/her authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

25. But instead of implementing such a simple safeguard, Defendant has intentionally created and maintained a system that encourages fraud at every step. Such system constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

26. Because the amount Defendant is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person -- and because of its vast resources, Defendant employs this scheme with the hope and expectation that its illegal conduct will go unpunished.

**THE FACTS RELATING TO NAMED PLAINTIFF WALKER**

27. In or about 2003, Plaintiff purchased new cell phone service for her personal use from an authorized sales representative of an established wireless carrier.

28. On that same day, in exchange for a cellular telephone service plan, Walker agreed to pay her carrier a set fee for a period of about 12 months.

29. In or about 2007, Walker's cell phone account was charged by Defendant for unwanted mobile content services in the form of premium text messages.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

7

30. At no time did Walker authorize the purchase of these products and services offered by Defendant or anyone else and at no time did Walker consent to Motricity's sending of text messages to her cellular telephone.

31. During the relevant time period, Defendant caused Walker to be charged service fees for so-called Premium text messages provided by Defendant.

32. At no time did Walker authorize Defendant or anyone else to bill her for these charges and at no time did Defendant verify Walker's purported authorization of these charges.

33. Defendant has yet to provide a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back interest, implement adequate procedures to ensure that such unauthorized charges would not appear in future billing periods and/or an assurance that such unauthorized charges would not appear in future billing periods.

## CLASS ALLEGATIONS

34. Plaintiff bring this action, pursuant to Code of Civil Procedure § 382 on behalf of herself and a class, defined as follows: The "Class": a class consisting of all wireless telephone subscribers in California who suffered losses or damages as a result of incurring charges on their cellular telephone bills from or on behalf of Motricity not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the defendants, and (ii) any employee of a defendant.

35. The Class consists of thousands of individuals and other entities, making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

36. The claims of Plaintiff are typical of the claims of all of the other members of the Class.

37. Plaintiff will fairly and adequately represent and protect the interests of the other members of the classes. Plaintiff has retained counsel with substantial experience in

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
8

1   prosecuting complex litigation and class actions. Plaintiff and their counsel are committed to

2   vigorously prosecuting this action on behalf of the members of the classes, and have the

3   financial resources to do so. Neither Plaintiff nor their counsel has any interest adverse to

4   those of the other members of the Class.

5        38.    Absent a class action, most members of the Class would find the cost of

6   litigating their claims to be prohibitive, and will have no effective remedy. The class

7   treatment of common questions of law and fact is also superior to multiple individual actions

8   or piecemeal litigation in that it conserves the resources of the courts and the litigants, and

9   promotes consistency and efficiency of adjudication.

10       39.    Defendant has acted and failed to act on grounds generally applicable to the

11   Plaintiff and the other members of the respective classes, requiring the Court's imposition of

12   uniform relief to ensure compatible standards of conduct toward the members of the Class.

13       40.    The factual and legal bases of Defendant's liability to Plaintiff and to the other

14   members of the Class are the same, resulting in injury to the Plaintiff and to all of the other

15   members of the Class. Plaintiff and the other members of the Class have all suffered harm

16   and damages as a result of Defendant's unlawful and wrongful conduct.

17       41.    There are many questions of law and fact common to the claims of Plaintiff

18   and the other members of the Class, and those questions predominate over any questions that

19   may affect individual members of the Class. Common questions for the Class include but are

20   not limited to the following:

21           (a)    Whether Motricity has unjustly received money belonging to Plaintiff

22           and the Class and whether under principles of equity and good conscience, Motricity

23           should not be permitted to retain it.

24           (b)    Whether Motricity tortiously interfered with contracts between

25           Plaintiff and the Class, on the one hand, and their wireless carriers, on the other hand,

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  by causing them to be charged for products and services by their carrier that were

2  unauthorized.

3       (c)    Whether Defendant's conduct described herein violates California

4  Business and Professions Code sections 17200, *et seq.*

5       (d)    Whether Defendant's conduct described herein violates California

6  Consumer Legal Remedies Act ("CLRA").

7       (e)    Whether Defendant's conduct described herein violates California

8  California's Computer Crime Law, Cal. Pen. Code § 502.

9       (f)    Whether Defendant's actions warrant an accounting.

10       (g)    Whether Defendant's actions amount to a trespass to chattels.

11  

**FIRST CAUSE OF ACTION**
**(Restitution/Unjust Enrichment on behalf of the Class)**

12

13      42.   Plaintiff incorporates by reference the foregoing allegations.

14      43.   A benefit has been conferred upon Motricity by Plaintiff and the Class.

15  Motricity has received and retain money belonging to Plaintiff and the Class resulting from

16  their billing and collecting significant amounts of money in unauthorized mobile content

17  charges.

18      44.   Motricity appreciates or has knowledge of said benefit.

19      45.   Under principles of equity and good conscience, Motricity should not be

20  permitted to retain the money belonging to Plaintiff and the Class which Motricity has

21  unjustly received as a result of its actions.

22      46.   Plaintiff and the Class have suffered loss as a direct result of Defendant's

23  conduct.

**SECOND CAUSE OF ACTION**
**(Tortious Interference with a Contract on behalf of the Class)**

24

25      47.   Plaintiff incorporates by reference the foregoing allegations.

26      48.   Plaintiff and the Class had contractual relationships with their wireless carriers

27  whereby they agreed to pay a certain sum of money in exchange for activation of their

28

1 | cellular telephone accounts and their carriers' promise to provide various communication and

2 | related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products

3 | or services the purchase of which they had authorized.

4 |     49.    Motricity knew of said contractual relationships and intended to and did

5 | induce a breach or disruption of the contractual relationships.

6 |     50.    Motricity intentionally interfered with said contractual relationship through

7 | improper motives and/or means by knowingly and/or recklessly continually causing to be

8 | placed on the cellular telephone bills of cellular telephone owners across the nation

9 | unauthorized charges.

10 |     51.    Plaintiff and the Class suffered loss as a direct result of the conduct of

11 | Motricity.

12 | **THIRD CAUSE OF ACTION**

13 | **(Violation of the California Consumer Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1770 on behalf of the Class)**

14 |     52.    Plaintiff incorporates by reference the foregoing allegations.

15 |     53.    The mobile content services that are the subject of this complaint are services

16 | for other than a commercial or business use, as described in Cal. Civ. Code § 1761(b). The

17 | mobile content services are used for personal, family, or household purposes, and mobile

18 | content service subscribers are consumers under the definition in Cal. Civ. Code § 1761(d).

19 | Plaintiff and the other class members use the wireless services for personal, family, or

20 | household purposes, and are consumers under the definition in Cal. Civ. Code § 1761(d).

21 |     54.    As an aggregator, Motricity misrepresents the approval for, characteristics of,

22 | and the obligations associated with the mobile content services when they communicate to

23 | the carriers that Plaintiff and the other class members have consented the mobile content

24 | services and approved the charges for those services. These communications to the carriers to

25 | charge Plaintiff and the other class members for mobile content services, and violate Cal.

26 | Civ. Code § 1770(a)(2), (5), (14).

27 |

28 |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
11

1      55.    Collectively, these CLRA violations have damaged the Plaintiff and other

2  class members by causing them to pay falsely inflated cellular service bills as well as the lost

3  time required to sort, read, discard and attempt to prevent future charges for unwanted mobile

4  content services, and lost storage space, connectivity, and computing resources on the

5  cellular phones.

6      56.    Plaintiff, on her own behalf and behalf of the other class members, seeks an

7  order enjoining Defendant's collective CLRA violations alleged herein, restitution of

8  property gained by the CLRA violations, and court costs and attorney's fees under the CLRA

9  (Cal. Civ. Code § 1780(d)).

10                **FOURTH CAUSE OF ACTION**

11       **(Violation of California's Unfair Competition Law ("UCL"),**
             **Cal. Bus. & Prof. Code § 17200 on behalf of the Class)**

12      57.    Plaintiff incorporates by reference the foregoing allegations.

13      58.    Motricity's communications to wireless carriers falsely state that Plaintiff and

14  the other class members have approved, authorized, and/or consented to charges for mobile

15  content services, and are deceptive and unfair. Further, these communications are unlawful

16  because they violate the CLRA, CFAA, and the FCA.

17      59.    The acts alleged above are unlawful, unfair or fraudulent business acts or

18  practices and constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

19      60.    Collectively, these UCL violations have damaged the Plaintiff and other class

20  members by causing them to pay falsely inflated cellular service bills, as well as the lost time

21  required to sort, read, discard and attempt to prevent future charges for unwanted mobile

22  content services, and lost storage space, connectivity, and computing resources on the

23  cellular phones.

24      61.    Plaintiff, on her wn behalf and behalf of the other class members, seeks an

25  order enjoining Defendant's unfair competition alleged herein, and restitution of property

26

27

28

1   gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well

2   as interest and attorney's fees and costs pursuant to, in part, Cal. Code Civ. Proc. § 1021.5.

### FIFTH CAUSE OF ACTION
**(Violation of California's Computer Crime Law, Cal. Pen. Code § 502
on behalf of the Class)**

62.     Plaintiff incorporates by reference the foregoing allegations.

63.     The cellular phones owned by Plaintiff and the other class members are sophisticated electronic devices which are programmable and capable of being used in conjunction with external files, and contain many (if not most) of the same capabilities and equipment as traditional desktop computers (as well as cellular radio signal processing technology). These cellular phones are computer systems under the definition of Cal. Pen. Code § 502(b)(5). Likewise, the mobile content alleged in this Complaint is data under the definition of Cal. Pen. Code § 502(b)(6).

64.     The delivery of mobile content to cellular phones is only possible through the Defendant's access to the cellular phones of Plaintiff and the other class members. When the cellular phones owned by Plaintiff and other class members receive mobile content, it consumes computer services as defined Cal. Pen. Code § 502(b)(4), including computer time, data processing, and storage capacity. Moreover, Plaintiff and the other class members' cellular service will be terminated unless they pay additional fees for the receipt of the unauthorized mobile content, whether they authorized that mobile content or not.

65.     Through the conduct alleged above, Defendant participates in and/or facilitates the transmission of mobile content to the cellular phones owned by Plaintiff and the other class members. Through this conduct, Defendant violates Cal. Pen. Code § 502(c)(3) by knowingly and without permission using or causing to be used computer services and violate Cal. Pen. Code § 502(c)(4) by knowingly accessing the cellular phones of Plaintiff and the class members and adding data to those phones, without permission.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

13

66.     Plaintiff and the other class members are damaged by those violations. Defendant's violations of Cal. Pen. Code § 502 cause the Plaintiff and the other class members to pay charges for mobile content services to which they did not consent. Defendant's violation of Cal. Pen. Code § 502 further damages Plaintiff and other class members by causing them to pay falsely inflated cellular service bills to the Defendant, as well as the lost time required to sort, read, discard and attempt to prevent future charges for unwanted mobile content services, and lost storage space, connectivity, and computing resources on the cellular phones.

67.     Plaintiff, on her own behalf and behalf of the other class members, seeks compensatory damages in an amount to be determined at trial and injunctive relief or other equitable relief (including an accounting, and disgorgement of fees obtained while these violations were ongoing), as well as reasonable attorney's fees, against Defendant under Cal. Pen. Code § 502(e).

### SIXTH CAUSE OF ACTION
#### (An Accounting on behalf of the Class)

68.     Plaintiff incorporates by reference the foregoing allegations.

69.     The accounts at issue are so complicated that an ordinary recourse demanding a fixed sum is impracticable.

70.     The balance owed by the Defendant to the Plaintiff and the other members of the Class can be ascertained through a proper accounting.

71.     Plaintiff therefore seeks an accounting from Defendant of the monies owed to the Plaintiff and the other members of the Class for aforementioned conduct.

### SEVENTH CAUSE OF ACTION
#### (Trespass to Chattels on behalf of the Class)

72.     Plaintiff incorporates by reference the foregoing allegations.

73.     At all relevant times, Defendant and/or its agents intentionally and without consent, gained access to Plaintiff's wireless handset and the handsets of the class, used

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
14

1   Plaintiff's wireless handset and the handsets of the class, occupied memory of these handsets,
2   and/or dispossessed Plaintiff and the members of class of unencumbered access to their
3   wireless handsets.

4       74.     In so doing, Defendant intentionally intermeddled with, damaged, and
5   deprived Plaintiff and the class of their wireless handsets, or a portion thereof.

6       75.     Under principles of equity and good conscience, Defendant should not be
7   permitted to so interfere with Plaintiff and the Class's possession and use of their wireless
8   handsets.

9                           **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiff Palma Walker, on behalf of herself and the Class, prays for
11   the following relief:

12          a)   Certify this case as a class action on behalf of the Class defined above
13               and appoint Palma Walker as Class Representative, and appoint
14               KamberEdelson, LLC, as lead counsel;

15          b)   Declare that the actions of Motricity, as set out above, constitute unjust
16               enrichment, warrant an accounting, tortious interference with a contract,
17               trespass to chattels, and violate the CLRA and UCL;

18          c)   Enter judgment against Defendant for all economic, monetary, actual,
19               consequential, and compensatory damages caused by Defendant's conduct,
20               and if its conduct is proved willful award Plaintiff and the Class exemplary
21               damages (for the sake of clarity, Plaintiff explicitly disclaims any claim for
22               damages under the CLRA at this time);

23          d)   Award Plaintiff and the Class reasonable costs and attorneys' fees;

24          e)   Award Plaintiff and the Class pre- and post-judgment interest;

25          h)   Enter judgment for injunctive and/or declaratory relief as is necessary
26               to protect the interests of Plaintiff and the Class; and

27

28
    **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
                               15

1    i)    Award such other and further relief as equity and justice may require.

2                                **JURY DEMAND**

3    Plaintiff request trial by jury of all claims that can be so tried.

4                                        Respectfully submitted,

5    Dated: July 3, 2008                KAMBEREDELSON, LLC

6

7

8

9                                By: _____
10                                    **ALAN HIMMELFARB**
                                      One of the Attorneys for CAMELLIA
11                                    WALKER, individually and on behalf of
                                      classes of similarly situated individuals.

12

13   ALAN HIMMELFARB
     KAMBEREDELSON, LLC
14   2757 Leonis Boulevard
15   Vernon, California 90058
     Telephone: (323) 585-8696

16
     JAY EDELSON (pending PRO HAC VICE)
17   MYLES MCGUIRE (pending PRO HAC VICE)
     KAMBEREDELSON, LLC
18   53 West Jackson Boulevard, Suite 1530
19   Chicago, Illinois 60604
     Telephone: (312) 589-6370
20   Fax: (312) 873-4610

21

22

23

24

25

26

27

28
     COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
                                    16

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

| | |
|---|---|
| CAMELLIA WALKER, individually and on behalf of a class of similarly situated individuals,<br><br>     Plaintiff,<br><br>  vs.<br><br>MOTRICITY, INC., a Delaware corporation,<br><br>     Defendant. | Case No. _____<br><br>**DECLARATION OF STEPHEN LEONARD** |

I, Stephen Leonard, hereby declare as follows:

1.  I make this declaration from my personal knowledge and for use in this case.

2.  I am the General Manager, Off Deck, for Motricity, Inc. ("Motricity") and have served in this capacity for over two and one half years. I have extensive knowledge of revenues generated by Motricity as a result of the delivery of premium mobile content to mobile subscribers.

**DECLARATION OF STEPHEN LEONARD**

3. I do not intend anything stated herein to indicate, admit, or acknowledge any fault or wrongdoing or any kind by Motricity.

4. Based on documents and data maintained in the ordinary course of business, Motricity has generated in excess of $15 million in revenue as a result of the delivery of premium mobile content to mobile subscribers in California.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 25, 2009.

_____
STEPHEN LEONARD

**DECLARATION OF STEPHEN LEONARD**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 08-CV-22131-USDJ Graham/USMJ Torres

DENEE VANDYKE and BEN WALKER,          )
individually and on behalf of a class of    )
similarly situated individuals,             )
                                           )
                  Plaintiffs,              )
                                           )
        v.                                 )
                                           )
MEDIA BREAKAWAY LLC, a Nevada limited   )
liability company,                         )
                                           )
                  Defendant.               )

## DECLARATION OF JAY EDELSON

Pursuant to 28 U.S.C. § 1764, I, Jay Edelson, hereby declare and state as follows:

1. I am an attorney admitted to practice in the State of Illinois, as well as the United States
   District Courts for the Northern District of Illinois and the Western District of Michigan,
   and have appeared in this case *pro hac vice*. I represent the Plaintiffs in the above-titled
   action. I am entering this declaration in support of the attached Motion and
   Memorandum for Preliminary Approval of Class Action Settlement. I am over the age of
   eighteen and am fully competent to make this declaration. This declaration is based upon
   my personal knowledge, except where expressly noted otherwise.

2. I am one of the managing partners in the law firm of KamberEdelson, LLC.

3. Beginning in 2005, my law firm and its predecessor have been involved in a wide-
   ranging investigation into the mobile content industry, along with a team of other
   attorneys prosecuting similar actions.

4. To date, that investigation has resulted in information gathered from over 1,000
   aggrieved consumers. As a result, consumers have filed lawsuits across the country
   against all the major wireless carriers (e.g. AT&T, Sprint, and T-Mobile), aggregators
   (e.g. mBlox. Motricity, and Mobile Messenger) and mobile content providers (e.g. Media

Case3:09-cv-01316-MHP Document1 Filed03/25/09 Page34 of 49

Case 2:08-cv-0113-MJP Document 35-2 Filed 03/6 ..2009 Page 3 of 18
Case 1:08-cv-22131-DLG Document 56-3 Entered on FLSD Docket 02/13/2009 Page 3 of 18

Breakaway) broadly challenging widespread cramming throughout the mobile content
industry.

5. Class Counsel's investigation has also lead to an exchange of information and litigation
strategy with multiple governmental agencies, including the Florida Attorney General's
Office and the California Public Utilities Commission.

6. I have received and reviewed numerous documents produced from numerous state
agencies, including the Illinois, Maryland, and Florida Attorney Generals' Offices.

7. I have also participated in in-person meetings with both the Florida Attorney General's
Office and the California Public Utilities Commission to discuss their respective
investigations into the mobile content industry. With respect to the Florida Attorney
General's Office, Class Counsel had numerous discussions regarding Media Breakaway's
billing practices.

8. On December 2, 2009, Class Counsel met in person with Media Breakaway's Counsel in
Miami, Florida. The Parties were unable to reach a settlement on that date, but agreed to
revisit the issues at a later time.

9. Thereafter, the parties continuously engaged in settlement discussions, which, on January
12, 2009, culminated in the execution of a memorandum of understanding ("MOU"). As
set forth in the MOU, the parties reached an agreement in principal as to all relief due to
the class. The only remaining issues that required resolution were the amount of
attorneys' fees to be paid to Class Counsel and incentive awards to be paid to the Class
Representatives. Under the MOU, the Parties agreed to refer such disputes to binding
mediation presided over by Mediator Rodney A. Max of Upchurch Watson White & Max
Mediation Group.

10. On February 5, 2009, the parties engaged in a mediation to resolve the issues of
attorneys' fees and incentive awards. Mediator Rodney A. Max presided over the
mediation. Although the Parties were unable to reach agreement on the amount of
attorneys' fees to be paid to Class Counsel or incentive awards to be paid to the Class

Case3:09-cv-01316-MHP   Document1   Filed03/25/09   Page35 of 49

Case 2:08-cv-0113u-MJP   Document 35-2   Filed 03/u...2009   Page 4 of 18
Case 1:08-cv-22131-DLG   Document 56-3   Entered on FLSD Docket 02/13/2009   Page 4 of 18

Representatives, they were able to reach agreement on other matters, as well as a
framework to resolve any outstanding issues. The Parties also agreed that Class
Counsel's fee award will not exceed $2.3 million.

11. Based upon information that Class Counsel has collected in this and the Related Action,
and from experts, governmental agencies, and in litigation involving the aggregators and
wireless carriers, Class Counsel estimates that approximately 20% of all mobile content
charges are unauthorized. Based on Class Counsel's investigation in this case and
through discovery, this percentage was adjusted to reflect an estimation of Media
Breakaway's unauthorized charges as compared to the industry more generally. In
determining the cap amount, Class Counsel took into account other factors such as
previous refunds given, the results of an investigation from the Office of the Florida
Attorney General, and the complaints received from consumers.

12. Based upon the foregoing, Class Counsel believes the $5.75 million settlement cap
approximates the full amount of unauthorized charges attributable to Media Breakaway.
Because the unauthorized charges typically range from $10-$20, the class now has the
opportunity to recover the majority of unauthorized charges.

13. As part of the prospective relief secured on behalf of the class, Media Breakaway has
agreed to continue and enhance its refund policy and to allow all wireless subscribers
who contact customer service to unsubscribe from any unwanted mobile content
subscription. In addition, Media Breakaway has agreed to adhere to U.S. federal laws
and rules and applicable state regulatory rules concerning the advertising and sale of
Mobile Content subscription services and prevailing mobile best practices such as the
Consumer Best Practices Guidelines promulgated by the Mobile Marketing Association.

14. The Parties reached the instant settlement after hard-fought litigation, and based upon the
information produced by Media Breakaway in discovery, and otherwise, Plaintiffs'
counsel is confident in the strength of the claims alleged in the Class Action Complaint
and that Plaintiffs would ultimately prevail at trial. Notwithstanding the foregoing, when

the strengths of the Plaintiffs' claims are weighed against the uncertainty inherent in litigation, the legal and factual obstacles present, and the complexity of class action practice, I believe this settlement to be fair and in the best interest of the class.

15. The present suit has been pending since June 10, 2008, and as a result of the coordinated proceedings involving MB, the wireless service providers, aggregators, and other content providers, Class Counsel had ample foundation upon which to evaluate the proposed settlement. The numerous pending class actions involving alleged unauthorized charges for mobile content have allowed the parties to conduct extensive investigations into the relevant facts and law and to test certain issues through motion practice. Each party, therefore, had the necessary information to evaluate the strengths and weaknesses of their cases in order to mediate effectively. The parties were able to reach the present settlement only after motion practice, discovery, in-person settlement discussions, mediation, and negotiations over settlement terms and language.

16. A true and accurate copy of the firm resume of KamberEdelson LLC is attached to Plaintiff's Motion for Preliminary Approval of the Class Action Settlement as Exhibit B(1).

17. If called on to testify, I could and would do so competently.

18. Further affiant sayeth not.

Dated this 13th day of February 2009.

Jay Edelson

# Exhibit B-1

## KAMBEREDELSON, LLC FIRM RESUME

KAMBEREDELSON, LLC is a commercial litigation and legal consulting firm with attorneys in Chicago, New York, Los Angeles, and Florida. The firm has four primary practice groups: plaintiffs' class action litigation (with a particular emphasis on technology cases), class action litigation defense, general commercial litigation, and legal consulting.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the 2007 contaminated pet food recall, the recent Thomas the Tank Engine lead paint class actions, the AT&T mobile content class actions, and the Sony CD technology multi-district litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

### PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

KAMBEREDELSON is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions. We have several sub-specialties within our plaintiffs' class and mass action practice group:

*Technology Consumer Protection Class Actions:* We have settled the only class actions to date alleging that text message spam under the Telephone Consumer Protection Act, including a $7,000,000 settlement with Timberland Co. We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, and an injunctive settlement against Facebook, Inc. Our attorneys also settled an international class action against Register.com, which alleged that the company engaged in deceptive practices in placing advertising on "coming soon" pages of newly registered domain names.

**Representative Settlements:**

- *Shen v. Distributive Networks LLC.* No. 06 C 4403 (N.D. Ill.): Co-lead counsel in a class action alleging that defendant violated federal law by sending unsolicited text messages to the cellular telephones of consumers nationwide. The settlement – the first of its kind in the country – provided each class member with up to $150 in cash.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.

Case settled for $7,000,000.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel in class action settlement involving 16 related cases against largest wireless service provider in the nation. Settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12,000,000.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Duffy v. Nevis Mobile, LLC*, No. 08 CH 21376 (Cir. Ct. Cook County, IL): Class counsel in certified class action against mobile content provider for unauthorized mobile content charges resulting in default judgment over $10,000,000.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in non-class action settlement concerning the transmission of allegedly unauthorized mobile content.

- *Zurakov v. Register.com*, No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17,000,000.

- *Kiesel v. Time Warner*, No. 809542 (Orange County Sup. Ct., CA): Co-lead counsel in a representative action on behalf of thousands of apartment and condominium residents in which firewalls were breached during cable installation. Settlement provided the class with complete relief including the inspection of every multi-unit dwelling in the affected county and repair of all breached units wherever they were found.

- *Weaver v. WebTV*, No. 793551 (Santa Clara Sup. Ct., CA): Co-lead counsel in a certified nationwide consumer class action alleging consumer fraud/deceptive advertising of computer services and capabilities. The settlement provided the class with a collective award guaranteeing a minimum face value of $6,000,000.

***Products Liability Class Actions***: We have been appointed lead counsel in state and federal products liability class settlements, including a $30,000,000 settlement resolving the "Thomas the Tank Engine" lead paint recall cases, a $32,000,000

settlement involving the largest pet food recall in the history of the United States and Canada, and a $100,000,000 settlement involving Starlink Corn Products.

**Representative Settlements:**

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30,000,000 and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Foods Product Liability Litigation*, No. 07-2867 (D. N.J.): Co-lead counsel in class action involving largest pet food recall in United States history. Settlement provided $24,000,000 common fund and $8,000,000 in charge backs.

- *In re Starlink Corn Products Liability Litigation* (N.D. Ill.): Represented sub-class of farmers who grew recalled Starlink corn in a consolidated settlement of federal class action valued in excess of $100,000,000.

- *Kan v. Toshiba America Information Systems, Inc.*, No. BC327273 (Los Angeles Sup. Ct.): Class counsel in a defective product/breach of warranty action concerning laptop computers. Settlement provided the class with a collective award valued at approximately $45,000,000.

***General Consumer Protection Class Actions:*** We have successfully prosecuted countless class action suits against health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Representative Settlements:**

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40,000,000 in benefits, including cash payments, debt relief, and free health club services.

- *Lofton v. Bank of America* (N.D. Cal): Lead counsel in class action alleging deceptive imposition of "fuel-related fees" in connection with airline ticket purchases. Settled for over $2,000,000 in cash, in addition to other relief.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11,000,000 and $14,000,000 in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2,000,000 in debt relief.

- *Chancer v. Princess Cruises*, No. BC 115472 (Los Angeles Sup. Ct.): Co-lead counsel in class action lawsuit challenging a cruise line's deceptive "low price guarantee" as a consumer fraud class action. The settlement provided the class with a collective award valued at several millions of dollars.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

- *Cioe v. Lycos*, No. 02 CH 21456 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

- *Gavrilovic v. Vintacom Media Group, Inc.*, No. 04 CH 11342 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

- *McArthur v. Spring Street Networks*, 100766/2004 (New York County, NY): Co-lead counsel in a nationwide class action suit settled under New York consumer protection statutes.

- *California Reconveyance Cases*: Part of a team of attorneys who settled a series of state court class action cases under California's Reconveyance Statute. Cases settled for a collective amount of over $10,000,0000.

*Insurance Class Actions:* We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin

insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative Settlements:**

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

*Securities Class Actions:* We have successfully prosecuted securities class actions against companies such as Command Systems and Loch Harris on behalf of shareholders.

**Representative Settlements:**

- *Stassi et al. v. Loch Harris et al.*, No. GN 200180 (TX): Lead counsel in derivative action on behalf of technology development company that successfully obtained dissolution of corporation and distribution of assets to shareholders.

- *In re Command Systems*, Case No. 98-cv-3279 (S.D.N.Y.): Lead counsel in securities class action against technology company in which participating shareholders recovered over 80% of their losses.

*Privacy Class Actions:* We have litigated numerous class actions against Facebook, Sears, TD Ameritrade, and others involving the failure to protect customers' private information, some resulting from actual security breaches.

**Representative Settlements:**

- *In re Sony BMG CD Technologies*, No. 05-cv-0575 (S.D.N.Y.): Co-lead counsel in case that resulted in settlement correcting risk of harm to computer users caused by Digital Rights Management on music CD's. Settlement included replacement of all affected music CD's and an award of additional music CD's to class members.

- *Wormley v. GeoCities*, No. 196032 (Los Angeles Sup. Ct.): Class Counsel in consumer class action for privacy violations that is believed to be the first Internet privacy case to recover a benefit for impacted class members.

Case3:09-cv-01316-MHP Document1 Filed03/25/09 Page43 of 49

Case 2:08-cv-0113o-MJP Document 35-2 Filed 03/0...009 Page 12 of 18
Case 1:08-cv-22131-DLG Document 56-3 Entered on FLSD Docket 02/13/2009 Page 12 of 18

*Mass/Class Tort Cases*: Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions.

**Representative Cases:**

- *Aaron v. Chicago Housing Authority*, 99 L 11738, (Cir. Ct. Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10,000,000.

- *Sturman v. Rush Presbyterian-St.Luke's Medical Center*, 2000 L 11069 (Cir. Ct. Cook County, IL): Part of team of attorneys in suit against hospital and national association of blood banks alleging failure to warn of risks of hepatits C infection as a result of past blood transfusions.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## CLASS ACTION DEFENSE PRACTICE GROUP

Our founding attorneys began their careers defending class actions at large national firms. We have successfully handled numerous class actions on behalf of banks, securities firms, and numerous retailers.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes. to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations. All of our attorneys have regularly practiced in state and federal trial and appellate courts. The firm also has experience advising companies in international matters arbitrated before the ICC, including a multi-billion dollar action against Shell Oil.

## LEGAL CONSULTING

Legal consulting is an area of practice that sets KAMBEREDELSON apart from other law firms. The firm advises on governmental and consumer issues and has helped its clients formulate business strategies, revise contractual and advertising material, and implement consumer protection strategies more generally. Our clients range from small Internet start-ups, to brick and mortar companies, to one of the most trafficked Internet marketers, content and commerce firms in the country.

## OUR ATTORNEYS

**SCOTT A. KAMBER** is a founding member of KAMBEREDELSON. Mr. Kamber currently serves as lead or co-lead counsel in numerous major national class actions including *In re Pet Food*, *In re ATI Tech HDCP Litig.*, *Johnson v. Microsoft*, *In re Network Commerce Securities Litig.*, and *In re HP Power Plug and Graphic Card Litig.* Mr. Kamber has also served in leadership roles in private and class actions including suits on behalf of shareholders, consumers and private corporations in the United States and abroad, including: *In re Song BMG CD Technologies* (one of the largest computer virus cases ever resolved), *Wormley v. GeoCities* (consumer class action for privacy violations that is believed to be the first Internet privacy case to recover a benefit for impacted class members); *In re Starlink Growers* (represented sub-class of farmers who grew Starlink in a consolidated settlement of federal class action valued in excess of $100 million); *In re Loch Harris* (derivative action that successfully obtained dissolution of corporation and distribution of assets to shareholders); *In re Command Systems* (securities class action in which participating shareholders recovered over 80% of their losses); and *In re WebTV* (consumer class action for false advertising).

In addition to these commercial cases, Mr. Kamber has been involved in the efforts of African torture victims to bring their persecutors to justice under the Alien Tort Claims Act and has achieved significant decisions for his clients before the United States Court of Appeals for the Second Circuit and the Southern District of New York. One such result, *Cabiri v. Ghana*, 165 F.3d 193 (1999), is a leading Second Circuit case under the Foreign Sovereign Immunities Act.

Mr. Kamber graduated *cum laude* from University of California, Hastings College of the Law in 1991 where he was Order of the Coif, Articles Editor for Hastings Constitutional Law Quarterly and a member of the Moot Court Board. Mr. Kamber graduated with University and Departmental Honors from The Johns Hopkins University in 1986. Mr. Kamber has extensive courtroom experience and has tried over 15 cases to verdict. Prior to founding Kamber & Associates, LLC, Mr. Kamber represented both plaintiffs and defendants in a wide range of commercial litigation. Mr. Kamber is admitted to practice in the State of New York as well as the United States Supreme Court, the United States Court of Appeals for the Second Circuit and Ninth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. In addition, Mr. Kamber is well versed in the procedures and practice of numerous arbitration forums, both domestic and international. Prior to practicing law, Mr. Kamber was a financial consultant.

**JAY EDELSON** is a founding member of KAMBEREDELSON. He has served as lead counsel in over 40 class actions, resulting in hundreds of millions of dollars in relief for his clients. His

class action cases have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous life insurance, health insurance, and other state statutes. In February of 2007, the Chicago Sun Times nicknamed Mr. Edelson the "Spam Slammer" after he secured the first settlement of a suit under the Telephone Consumer Protection Act for the alleged transmission of unsolicited text messages. Mr. Edelson has been involved in a number of high-profile "mass tort" class and mass actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

On the defense side, he has successfully represented numerous financial institutions and Internet marketing companies in class action defense, consumer protection issues, and general litigation. He regularly counsels companies on legal compliance issues.

Mr. Edelson is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting. He has also appeared on dozens of television and radio programs to discuss his cases. In April of 2007, Mr. Edelson provided testimony to the Subcommittee on Agriculture Appropriations, Senate Committee on Appropriations, U.S. Senate Hearing on "Pet Food Contamination" in connection with one of the class action cases he prosecuted. Mr. Edelson consults with the University of Chicago Medical Center and the Pritzker School of Medicine on Internet and legal ethics issues. He has taught classes on class action law at Northwestern Law School, John Marshall Law School, and DePaul Law School. Mr. Edelson is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a partner of KAMBEREDELSON. His practice concentrates, nearly exclusively, on consumer protection law and class actions. Mr. McGuire has taken leadership roles in many nationwide and multi-state class actions. His specific area of emphasis is on "new technology" class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile. Mr. McGuire has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Mr. McGuire graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association. Prior to working as a plaintiffs' attorney, Mr. McGuire spent several years counseling high-tech companies.

**MICHAEL MCMORROW** is a partner of KamberEdelson. His practice focuses on commercial litigation and class action law. Mr. McMorrow is an experienced trial and appellate litigator, and has been a member of the Trial Bar for the Northern District of Illinois since 2005. Mr. McMorrow has represented clients in court and at trial across a full spectrum of commercial litigation issues, including trade secret litigation, commercial contracts, airplane leasing, airport construction, automotive manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily-regulated industries including insurance, defense contracting, healthcare and energy. Prior to joining the firm, Mr. McMorrow was Senior

Case3:09-cv-01316-MHP Document1 Filed03/25/09 Page46 of 49

Case 2:08-cv-0113b-MJP Document 35-2 Filed 03/0-..2009 Page 15 of 18
Case 1:08-cv-22131-DLG Document 56-3 Entered on FLSD Docket 02/13/2009 Page 15 of 18

Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mr. McMorrow graduated magna cum laude from the University of Illinois College of Law in 2000, where he was Associate Editor of the University of Illinois Law Review, a Harno Scholarship recipient, and President of the Prisoners' Rights Research Project. Mr. McMorrow received his B.A. in Political Science from Yale University in 1994. Mr. McMorrow has been a member of the Chicago Bar Association Judicial Evaluation Committee since 2003, and his pro bono representations have included asylum applicants and prisoners' rights issues.

**STEVEN W. TEPPLER** is Senior Counsel to KAMBEREDELSON. Mr. Teppler concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Mr. Teppler has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Mr. Teppler's recent publications include: *Spoliation in the Digital Universe, The SciTech Lawyer*, Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley – The Merger of Information Security and Accountability* (co-author), 45 Jurimetrics J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton: A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System*, e-filing Report, June 2005. Mr. Teppler is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Mr. Teppler graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., summa cum laude, from the City College of New York in 1977. Mr. Teppler is admitted to the bars of New York, the District of Columbia and Florida.

**DANA B. RUBIN** is an associate at KAMBEREDELSON focusing her practice on a wide range of class action issues. She graduated with honors from the University of Maryland, College Park in 1993. She received her J.D. in 1999 from Fordham University School of Law, where she was an Associate Editor on the Intellectual Property, Media & Entertainment Law Journal.

Prior to joining KAMBEREDELSON, Ms. Rubin played a role in numerous private and class actions on behalf of shareholders and consumers. Ms. Rubin has also represented both plaintiffs and defendants in employment litigation and civil rights matters. Ms. Rubin is admitted in the State Courts of New York and the United States District Courts for the Southern and Eastern Districts of New York. She is a member of the New York State Bar Association.

**STEVEN LEZELL** is an associate at KAMBEREDELSON. Mr. Lezell has litigated a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate

Case3:09-cv-01316-MHP Document1 Filed03/25/09 Page47 of 49

Case 2:08-cv-0113b-MJP    Document 35-2    Filed 03/0..2009    Page 16 of 18
Case 1:08-cv-22131-DLG    Document 56-3    Entered on FLSD Docket 02/13/2009    Page 16 of 18

briefs, prosecuted class actions and participated in multi-session mediations.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif*, while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Mr. Lezell also served as a Notes and Comments Editor for *The Chicago-Kent Law Review* and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004. Mr. Lezell was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class and also received the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Lezell received his B.A. in political science, with Distinction, from the University of Michigan—Ann Arbor in 2002.

**RYAN D. ANDREWS** is an associate at KAMBEREDELSON. Prior to joining the firm, Mr. Andrews engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals. He has been appointed class counsel in multiple complex high-stakes class actions.

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and was named *Order of the Coif*. While in law school, Mr. Andrews was a Notes & Comments Editor for *The Chicago-Kent Law Review*, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Mr. Andrews graduated from the University of Michigan in 2002 earning his B.A., *with distinction*, in Political Science and Communications.

**RAFEY S. BALABANIAN** is an associate at KAMBEREDELSON. Prior to joining the firm, Mr. Balabanian was an associate attorney with a boutique Chicago law firm where he practiced commercial litigation. Mr. Balabanian has represented individual and corporate clients ranging from real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. Mr. Balabanian has first chaired both jury and bench trials, engaged in extensive motion practice, litigated class action matters and has acted as lead counsel in several mediations and arbitrations.

Mr. Balabanian received his J.D. from the DePaul University College of Law in 2005. While in law school, Mr. Balabanian received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Mr. Balabanian received his B.A. in history, *with distinction*, from the University of Colorado – Boulder in 2002.

**MICHAEL J. ASCHENBRENER** is an associate at KAMBEREDELSON. Prior to joining the firm, Mr. Aschenbrener was an associate for a large plaintiffs' consumer protection law firm where he prosecuted individual and class actions on behalf of consumers against mortgage companies and debt collectors. Mr. Aschenbrener successfully litigated multiple cases to judgment, securing redress for aggrieved consumers. Mr. Aschenbrener is also a former Assistant Attorney General for the State of Minnesota and a veteran of the telecommunications

Case3:09-cv-01316-MHP  Document1  Filed03/25/09  Page48 of 49

Case 2:08-cv-01136-MJP  Document 35-2  Filed 03/04/2009  Page 17 of 18
Case 1:08-cv-22131-DLG  Document 56-3  Entered on FLSD Docket 02/13/2009  Page 17 of 18

and advertising industries.

Mr. Aschenbrener graduated from Chicago-Kent College of Law in 2007. During law school, he was an award-winning member of the Moot Court Honor Society, as well as Editor of the Seventh Circuit Review. He also published an article in a law journal and received a CALI Award for obtaining the highest grade in his Tax Procedure course.

Mr. Aschenbrener received his B.A. in Journalism from the University of Minnesota-Twin Cities in 2001.

**ETHAN PRESTON** is Of Counsel to KAMBEREDELSON. Mr. Preston focuses on consumer technology, and concentrates his practice in antitrust/competition issues and information security issues. Mr. Preston has taken substantial leadership roles in numerous class action lawsuits. Mr. Preston is admitted to practice before the Northern District of Illinois, the District of New Mexico, and Illinois state courts. (Mr. Preston is an inactive member of the New Mexico state bar.)

Mr. Preston has authored the following law review articles: *Cross-Border Collaboration by Class Counsel in the U.S. and Ontario*, 4 Canadian Class Action Rev. 164 (2007), *The Global Rise of a Duty to Disclose Information Security Breaches*, 22 J. Marshall J. Computer & Info. L. 457 (2004) (with Paul Turner), Computer Security Publications: *Information Economics, Shifting Liability and the First Amendment*, 24 Whittier L. Rev. 71 (2002) (with John Lofton), and The USA PATRIOT Act: *New Adventures in American Extraterritoriality*, 10 J. Fin. Crime 104 (2002). Mr. Preston has also lectured on copyright issues at the University of Illinois at Chicago, and on comparative law on attorneys' fees and costs for the Center for International Legal Studies.

Mr. Preston received his Bachelor of Arts degree with honors from the Plan II honors program at the University of Texas at Austin, and his J.D. with distinction from the Georgetown University Law Center in 2001.

**ALAN HIMELFARB** is Of Counsel to KAMBEREDELSON. Mr. Himmelfarb was admitted to the practice of law in California in July 1979. At that time, at the age of 23, he was the youngest member of the California Bar. Within five years, he became managing attorney of a law firm employing six attorneys and a support staff of ten. He specialized in complex litigation, contracts, high-technology, foreign licensing, and foreign technology transfers, and practiced before both state and federal courts. In 1988, he took a position overseas as a foreign legal consultant in Asia. In this capacity, he acted as chief negotiator for international sales/service/technical transfer agreements, mediated cross-cultural (Asian-Western) business and governmental interests, evaluated international business/marketing strategies for multinational corporations, drafted and negotiated a full range of international transactional agreements for Korean, European and American corporations and businessmen and marketed legal services to Korean domestic market and international community.

In 1992, Mr. Himmelfarb returned to Los Angeles in the capacity of a litigator, with an emphasis on plaintiffs' work against banks and other financial institutions. He has been engaged in class action litigation since 1994.

Case3:09-cv-01316-MHP Document1 Filed03/25/09 Page49 of 49

Case 2:08-cv-0113u-MJP Document 35-2 Filed 03/0-...2009 Page 18 of 18
Case 1:08-cv-22131-DLG Document 56-3 Entered on FLSD Docket 02/13/2009 Page 18 of 18

**DAVE STAMPLEY** is Of Counsel to KAMBEREDELSON, where his practice focuses on technology law, particularly the litigation of issues affecting the privacy and security of consumers' personal information. As an assistant attorney general for New York, Mr. Stampley led aggressive Internet Bureau enforcement actions recognized for producing meaningful privacy protections and corporate security standards. He handled New York and multistate cases involving DoubleClick, Ziff Davis Media, Eli Lilly (prozac.com), and AOL/Netscape (SmartDownload).

Prior to joining KAMBEREDELSON, Mr. Stampley was general counsel and compliance specialist at Neohapsis, a provider of information risk management, security consulting, and lab testing services. He previously served as director of privacy for Reynolds & Reynolds, a global Fortune 1000 technology solutions provider.

In addition to Mr. Stampley's technology law and corporate compliance expertise, he gained extensive trial experience as an assistant district attorney in the premier public prosecutor's office, the Manhattan D.A.'s office (New York County). His 30 trials included serving as co-counsel in the case against Edward Leary, the "Manhattan Subway Bomber."

Mr. Stampley is a Certified Information Privacy Professional and a faculty member of the Institute for Applied Network Security. He frequently speaks at conferences on security and privacy compliance issues and has been a guest lecturer at the New York University Stern School of Business and DePaul University's Graduate Information Technology Studies. He served as an invited expert on the Platform for Privacy Preferences (P3P) Vocabulary Working Group of the WorldWide Web Consortium (W3C). Mr. Stampley clerked for the Honorable Lenore L. Prather of the Supreme Court of Mississippi and is a former business applications programmer and systems analyst.

Mr. Stampley is a graduate of the University of Virginia School of Law, where he was a Dillard Fellow, and Mississippi State University.