UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMELLIA WALKER, individually and on behalf of a class of similarly situated individuals, | No. C 09-01316 MHP |
| Plaintiff, | **MEMORANDUM & ORDER** |
| v. | **Re: Plaintiff's Motion to Remand** |
| MOTRICITY INC., a Delaware corporation, | |
| Defendant. / | |

    Plaintiff Camellia Walker, individually and on behalf of others similarly situated, brought suit against defendant Motricity, Inc. ("Motricity") in the Superior Court of California for the County of Alameda. Motricity removed the action to the Northern District of California. This court granted Walker's motion to remand the action back to state court on the basis that Motricity failed to show a sufficient amount in controversy to establish federal jurisdiction. Fifteen days later, Motricity again removed the action to federal court, standing by its assertion that it had satisfied the requirements for removal and subject matter jurisdiction. Now before the court is Walker's second motion to remand the action, again on grounds that Motricity has failed to establish a sufficient amount in controversy. The court has considered the parties' arguments fully, and for the reasons set forth below, rules as follows.

BACKGROUND

Because the facts of this case have been summarized in the court's prior memorandum and order granting plaintiff's motion to remand, see Docket No. 37, only a brief summary is necessary here. Unless otherwise indicated, the facts are taken from plaintiff's complaint. See Docket No. 1, Exh. A ("Compl.").

Walker is a resident of Alameda County, California. Motricity is a Delaware corporation with its headquarters and principal place of business in the State of Washington. Motricity does business throughout the State of California, where it allegedly operates mobile transaction networks to help companies develop, deliver and bill for "mobile content" services to compatible mobile devices in California and the nation. Mobile content services for cellular phones include such services such as customized ring tones, premium text messages, and sports score reports. Walker alleges that Motricity is able to reach and bill millions of wireless subscribers nationwide and has registered thousands of transactions and processed thousands of dollars in California over recent years.

Walker alleges that in or about 2007, she was charged by Motricity for unwanted mobile content services on her cellular telephone bill in the form of premium text messages. Walker alleges that at no time did she authorize the transactions and at no time did Motricity verify her purported authorization of the charges. Walker alleges that the protections normally present in consumer transactions, such as signatures and private credit card numbers, are not present in transmissions concerning mobile content services because all that is needed to charge a consumer for such products is the consumer's cellular telephone number. Walker alleges that Motricity has therefore engaged in an unlawful practice of charging cellular telephone customers for products and services the customers have not authorized. Walker alleges that Motricity has not provided a full refund of the unauthorized charges, nor implemented any adequate procedure to ensure that such unauthorized charges would not appear in future billing periods. Walker alleges that Motricity knowingly maintains a system that allows for erroneous charges to retain its respective shares of the improper collections.

2

On July 3, 2008, Walker brought this action on behalf of herself and a class of similarly situated wireless subscribers in California who have suffered losses as a result of incurring unauthorized charges on their cellular telephone bills from or on behalf of Motricity. She asserts the proposed class consists of thousands of individuals and other entities. Walker brings claims for restitution/unjust enrichment, tortious interference with a contract, violation of the California Legal Remedies Act under California Civil Code, section 1770, violation of California's Unfair Competition Law under California Business and Professional Code section 17200, violation of California's Computer Crime Law under California Penal Code, section 502, an accounting, and trespass to chattels, on behalf of herself and the class. Walker seeks an injunction to protect her interests and those of the purported class from Motricity's allegedly unfair and deceptive billing practices. She also seeks economic, monetary, actual, consequential and compensatory damages, exemplary damages if Motricity's conduct is proven willful, attorneys' fees and costs and pre- and post-judgment interest on behalf of herself and the class.

On July 31, 2008, Motricity removed this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"). As a basis for federal court jurisdiction, Motricity claimed that jurisdiction was appropriate pursuant to CAFA because the class action consisted of more than 100 members, Walker is a citizen of California, and Motricity is a corporation incorporated in Delaware and has its principal place of business in Washington. It further claims that the amount in controversy exceeds $5 million. See Notice of Removal, Docket No. 1, at 2-4; see also 28 U.S.C. §§ 1332, 1453.

On August 27, 2008, Walker moved to remand the action back to state court. After full briefing and a hearing, on March 11, 2009, this court granted the motion based on Motricity's failure to show, by a preponderance of the evidence, that the amount in controversy exceeded $5 million pursuant to CAFA. Motricity again removed the action to federal court just fifteen days later, relying on a declaration by Walker's counsel Jay Edelson in another, unrelated action in which he stated that 20 per cent of that aggregator's revenue came from unauthorized charges. Motricity is now asserting that, by using the same ratio in conjunction with the $15 million in revenue it generated from mobile content service transactions in California, along with any potential punitive

3

damages arising therefrom and reasonable attorneys' fees, it meets the amount in controversy requirement, and this court accordingly has original jurisdiction over the action.

LEGAL STANDARD

Removal of a civil action from state court to federal court is permitted if the federal court has "original jurisdiction" over the matter. See 28 U.S.C. § 1441(a). CAFA vests district courts with "original jurisdiction of any civil action in which . . . the amount in controversy exceeds the sum or value of $5,000,000" and in which the aggregate number of proposed plaintiffs is 100 or greater, any member of the plaintiff class is a citizen of a state different from the defendant, and the primary defendants are not States, State officials or other governmental entities. Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 997 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)). In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy is satisfied. 28 U.S.C. § 1332(d)(6).

The removing party bears the burden of establishing that removal is proper. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1990); see also Abrego Abrego v. Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006) (*per curiam*) ("under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."). The Ninth Circuit has identified different burdens of proof for establishing removal jurisdiction in the CAFA context, depending on what has been pled in the complaint. If it is facially apparent from the complaint that the jurisdictional amount is in controversy, then the court need not look beyond the "four corners of the complaint" to determine whether the jurisdictional amount is satisfied. Lowdermilk, 479 F.3d at 998. In such cases, the court applies the "legal certainty" standard. Id. If the complaint alleges specific damages in excess of the jurisdictional minimum, then the amount in controversy is presumptively satisfied unless it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum, whereas if the specific damages are less than the statutory minimum, it must be shown to a legal certainty that the amount in controversy exceeds that minimum for removal. Id.

4

If the jurisdictional amount in controversy is not facially apparent from the complaint, i.e., if the plaintiff has not sought a specific amount in damages or if the amount sought is unclear, then the court must look beyond the facts of the complaint and apply the preponderance of the evidence standard. See id.; Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007). Accordingly, in order to defeat a motion to remand, the removing defendant must prove by a "preponderance of the evidence" that the amount in controversy requirement has been met. Sanchez, 102 F.3d at 404 ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."); Abrego Abrego, 443 F.3d at 683 (applying the preponderance standard to complaints filed under CAFA that do not specify a particular amount in controversy).

In determining whether the jurisdictional requirement has been met in such cases, the court may consider evidence submitted subsequent to the notice of removal, including evidence submitted in conjunction with an opposition to a motion to remand. Cohen v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002); see Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969) ("it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"). The removal statutes are strictly construed such that any doubts are resolved in favor of remand. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

DISCUSSION

I.     Motion to Remand

To successfully maintain this action in federal court, Motricity must demonstrate that the $5 million minimum amount in controversy standard under 28 U.S.C. section 1332(d) has been met. As this court already ruled in its prior order granting plaintiff's first motion to remand, plaintiff has not pled a specific amount in damages either in excess or less than the federal amount in controversy requirement for class claims in her complaint. Thus, because the amount in controversy is not facially apparent from the complaint, Motricity bears the burden of actually proving the facts to support federal jurisdiction, namely, the jurisdictional amount. Sanchez, 102 F.3d at 403. The issue

1  once again before the court is whether Motricity has now carried its burden of proving by a

2  preponderance of the evidence that the amount in controversy exceeds $5 million. See Sanchez, 102

3  F.3d at 404 ("in cases where a plaintiff's state court complaint does not specify a particular amount

4  of damages, the removing defendant bears the burden of establishing, by a preponderance of the

5  evidence, that the amount in controversy exceeds [the statutory minimum].").

      To meet its burden of showing the amount in controversy is satisfied, Motricity this time around creatively relies on a declaration submitted by plaintiff's class counsel Jay Edelson as part of a separate action brought against a different defendant in Van Dyke v. Media Breakaway, LLC, No. C 08-22131 (S.D. Fl. 2008). See Notice of Removal, Docket No. 1, Exh. C (Declaration of Jay Edelson) (filed and assigned case No. C 09-1316-JL, which was subsequently related to this action and reassigned to this court).

      The pertinent part of the declaration, relied upon by Motricity in its second Notice of Removal, states:

> Based upon information that Class Counsel has collected in this and the Related Action, and from experts, government agencies, and in litigation involving the aggregators and wireless carriers, Class Counsel estimates that approximately 20% of all mobile content charges are unauthorized.

Edelson Dec. ¶ 11.

      In determining whether the amount in controversy exceeds the jurisdictional requirement, the court may consider facts in the Notice of Removal as well as any "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." See Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006) (noting that evidence a removing party might use to establish jurisdiction includes calculations based on the complaint's allegations and affidavits from the defendant's employees). However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which or has become removable[.]" 28 U.S.C. § 1446(b).

6

While section 1446(b) does not define "other paper," courts in the Ninth Circuit have followed the "paper in the case" rule in order to determine when the thirty-day provision begins to run. See, e.g., Hudson v. Pinkerton Sec. Servs., 2004 WL 2075449 at *3-4 (N.D. Cal. 2004) (Whyte, J.). The "paper in the case" rule requires that only official documents filed in the underlying state court matter be used as a basis for removal, and not documents filed in other cases. Id. "Almost without exception, [courts] have held that the paper required in [section] 1446 must be a part of the underlying suit rather than an outside development in removal jurisdiction." Phillips v. Allstate Ins. Co., 702 F. Supp. 1466, 1468-69 (C.D. Cal. 1989).

Because the Edelson declaration, the ostensible reason for the second removal, was not filed in the underlying state court action, it does not qualify as "other paper" under section 1446(b) and cannot serve as the basis for removal in this action. This is not the first time Motricity has attempted this ploy. In another recent action in the Western District of Washington, Motricity and some of these very same lawyers and law firms produced the very same Edelson declaration under nearly identical circumstances as here: a second removal approximately two weeks after remand based on the same pleadings plus the Edelson declaration; failure to disclose a related case on the civil cover sheet as required, thus eluding the eye of the remanding judge and leaving it up to the plaintiff to file papers notifying the court of a related case. See Rynearson v. Motricity, Inc., 2009 WL 1675718 at *2 (W.D. Wash. June 15, 2009). Defendant also failed to comply with this court's Local Civil Rule 3-12(b) requiring notification of a related case. Fortunately, plaintiffs in each of the cases did what was required of them and notified the courts. The court in Rynearson, consistent with this court's holding, found that defendant's second attempt at removal was improper because the Edelson declaration was originally filed on June 8, 2008, in "an entirely separate action between separate parties" and does not qualify as "other paper" for removal purposes. Moreover, it further undermines Motricity's position in this action that it is not relying on "new" material because the Edelson declaration was previously offered into the record as part of the first removal. See Docket No. 35, Exh. 1 (filed March 10, 2009).

1    Even if this court were to entertain the Edelson declaration as meeting the "other paper"
2 requirement, the methodology Motricity applies to satisfy the amount in controversy requirement
3 effectively requires the stacking of tenuous inference upon tenuous inference.  First, Motricity
4 provides the court with a $15 million figure as reflecting its total revenue from mobile content sales.
5 It then asks the court to assume a certain percentage of that total revenue is the result of
6 unauthorized charges by relying on a percentage estimate of unauthorized charges submitted in a
7 different case, against a different content provider, Media Breakaway, LLC.  However, the Edelson
8 declaration goes on to state, and Motricity conveniently omits from its Notice of Removal, that the
9 20% figure is an estimate of that particular defendant's "unauthorized charges as compared to the
10 industry more generally."  See Edelson Dec. ¶ 11.  Despite this, Motricity asks the court to assume
11 that this 20% figure is a generalization that spans the wireless industry, and is therefore applicable to
12 Motricity's business model as well.  This court finds that accepting such leaps in logic would be
13 inappropriate and contrary to established law.  See Lowdermilk, 479 F.3d at 1002 (removing party
14 not allowed to rely on "speculation and conjecture").

15    Motricity continues to build upon its speculative analysis.  It uses the $3 million of its $15
16 million revenue that would be attributable to unauthorized charges using the 20% figure, and then
17 goes on to state that using even a conservative one-to-one ratio for calculating punitive damages as
18 Walker is demanding, it would easily meet the $5-million amount in controversy requirement.
19 However, calculating punitive damages when compensatory damages have not been established is
20 putting the cart before the horse, and throwing yet another speculative figure onto its heap.  See e.g.,
21 California v. Altus Finance S.A., 540 F.3d 992 (9th Cir. 2008).  Finally, while Motricity is correct in
22 arguing that reasonable attorneys' fees can be used to determine the amount in controversy, this
23 court cannot find that attorneys' fees alone would meet the jurisdictional $5 million requirement.
24 See Brady v. Mercedes Benz, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (Chen, Mag. J.) (can
25 consider prospective attorneys' fees as allowed by law in determining amount in controversy).

8

II. Monetary Sanctions

Even though Walker has not moved to have attorneys' fees and costs awarded, this court finds it appropriate to do so in light of the frivolous nature of Motricity's second attempt at removal. In the court's prior memorandum and order granting plaintiff's motion to remand, the court remonstrated that Motricity had "built an elaborate house on a straw platform" in seeking to construct a jurisdictional theory to meet the amount in controversy. See Docket No. 37, at 8:5-6. Nothing has changed and Motricity wastes both Walker's and the court's time in arguing the same flimsy facts a second time around.

28 U.S.C. section 1447(c) states that, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Ninth Circuit has held that district court are granted "wide discretion" under section 1447(c) to decide whether to award attorneys' fees and costs along with an order to remand. See Moore v. Permanente Medical Group, 981 F.2d 443, 447 (9th Cir. 1992). The Ninth Circuit has further held that a district court need not find "bad faith" as a prerequisite to an award of attorneys' fees incurred to pursue a remand to state court. Id. at 446-48. The Ninth Circuit quoted with approval the district court's statement that "[t]he court's award of fees in this case is not a punitive award against defendants; it is simply reimbursement to plaintiffs of wholly unnecessary litigation costs the defendant inflicted." Id. at 447, quoting Moore v. Kaiser Foundation Hosp., Inc., 765 F. Supp. 1464, 1466 (N.D. Cal. 1991) (Walker, J). Finally, this court may retain jurisdiction over the issue of fees and costs even after the substantive action has been remanded to state court. See Bryant v. Britt, 420 F.3d 161, 165-66 (2d Cir. 2005).

Motricity removed this case a second time without any new, justifiable or convincing evidence that it meets the jurisdictional amount in controversy, thereby incurring unnecessary litigation for plaintiff. Based on Motricity's re-removal of this case to federal court just two weeks after the court remanded this action to state court, and by virtue of its conduct here and in the Western District of Washington, Motricity and its counsel have demonstrated their abusive practices and willingness to unnecessarily multiply litigation. Therefore, the court finds these actions worthy

9

1  of monetary sanctions.  Accordingly, the court hereby awards plaintiff attorneys' fees and costs for
2  the amount incurred in litigating this motion.

4  CONCLUSION

5        For the foregoing reasons, plaintiff's motion to remand is **GRANTED**.  The Clerk of the
6  Court is instructed to transmit forthwith a certified copy of this order to the Clerk of the Superior
7  Court for the County of Alameda.

8        It is further ORDERED that Motricity pay plaintiff's reasonable attorneys' fees and costs
9  incurred as a result of the second removal.  Plaintiff is granted leave to file an application and
10 declaration(s) for a monetary award (and a proposed order) including attorneys' fees and costs in
11 accordance with the preceding paragraph within thirty (30) days of the filing of this order.
12 Defendant may respond as to the reasonableness of the fees and costs **only**.

13       Finally, in view of this repetitive and contemptuous conduct, the court orders that in all
14 future cases where this defendant or these attorneys have removed or remove an action under CAFA
15 defendant and/or counsel shall file a copy of this order with the court and serve it upon opposing
16 counsel.

17       IT IS SO ORDERED.

Dated:  June 19, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

10